## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

|  |  |
|---|---|
| L. RANDAL BOYD, | |
| *Plaintiff* | |
| v. | Civil No. 04-214-P-C |
| GORDON R. ENGLAND, Secretary of the Navy, Department of the Navy | |
| *Defendant* | |

Gene Carter, Senior District Judge

### ORDER GRANTING DEFENDANT'S MOTION
### FOR SUMMARY JUDGMENT

In this action Plaintiff L. Randall Boyd alleges retaliatory discrimination stemming from protected activity under the Age Discrimination in Employment Act (hereinafter "ADEA").[1] *See* 29 U.S.C. § 633a. Plaintiff's pending claims are that Defendant Secretary of the Navy retaliated against him by creating a hostile work environment and by assigning him to a disadvantageous employment position. These acts are alleged to have been motivated by Plaintiff's previous claims of age discrimination. Defendant denies both of these claims. Now before this Court is

---

[1] Although Plaintiff's complaint claims jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*, in briefing both parties have agreed that the claim is only cognizable under the ADEA.

Defendant's motion for summary judgment.  For the reasons set forth below that motion will be granted.

## I.      Facts

The Court views the record on summary judgment in the light most favorable to the nonmovant.  *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 50 (1st Cir. 2000).  The summary judgment record supports the following relevant facts.

Since September 10, 1979, Plaintiff has been employed by the United States Navy at the Portsmouth Naval Shipyard.  For many of those years Plaintiff worked as a General Engineering Technician in various divisions.  In November of 1997, Plaintiff was asked to start a formal training program in the Planning and Engineering Department.  In keeping with that training assignment, in December of 1999, Plaintiff was detailed to specifically focus his work activities on training.  This detail was repeatedly renewed until 2001.

While performing his detailed duties, Plaintiff sought a pay raise from a General Schedule Grade 11 (hereinafter "GS-11") to a Grade 12 (hereinafter "GS-12").  These efforts were unsuccessful.  On June 27, 2000, a new training group was formally established.  The group was originally planned to consist of two GS-11 Instructors and one GS-12 Supervisor.  Plaintiff applied for the supervisor position.  In the selection process for that position Plaintiff was ranked as the second most qualified candidate.  On March 15, 2001, the top ranked candidate was chosen for the position.  Plaintiff, believing that his non-selection was the result of age discrimination, initiated an informal administrative complaint on April 16, 2001.

At the time Plaintiff was informed of his non-selection he was asked to join the new training group as a GS-11 instructor.  Plaintiff informed his superiors that he did not want the assignment.  Plaintiff did not want the assignment because he felt it would be more difficult to receive a promotion to GS-12 while in that group.  Against Plaintiff's wishes he was assigned to the group for one year effective July 1, 2001, as a GS-11 instructor (hereinafter "2001 assignment").

Shortly after his placement in the training group, Plaintiff's new supervisor informed him that he could no longer work through lunch as had been his practice for over 12 years.  This practice had been permitted in part because Plaintiff's prior work duties had not involved interacting with others, so that he had not needed to be on the same schedule as other workers.  Plaintiff's Response to Defendant's Statement of Material Facts (hereinafter "Plaintiff's Response to Defendant's SOMF") ¶ 139 (Docket Item No. 15).

On July 24, 2001 Plaintiff filed a formal administrative complaint alleging that his non-selection for the supervisor position was the result of age discrimination.  The complaint also alleged that the 2001 assignment and denial of Plaintiff's request to work through lunch were in retaliation for whistle-blowing activities in 1997.[2]

Shortly after he began work in the new training group, in August of 2001, several disputes arose regarding Plaintiff's taking of leave.  On August 8, 2001, Plaintiff left work one hour early due to extreme heat in his office.  Although employees are normally expected to obtain permission from their supervisors in advance of taking leave, on this occasion Plaintiff left his supervisor a note.  The next day Plaintiff's supervisor informed him that he was considering disciplinary action because Plaintiff had failed to request

---

[2] These whistle-blowing activities are unrelated to Plaintiff's allegations of age discrimination.

leave either in advance or in person.  *See* Letter from L. Randal Boyd to Equal

Employment Manager (attached as exhibit 108 to Defendant's Statement of Material

Facts (hereinafter "Defendant's SOMF") (Docket Item No. 11)).  Plaintiff's pay was

subsequently docked one hour for "leave without pay."

On August 15, 2001, Plaintiff requested four hours of annual leave to be taken the

next day.  Plaintiff's supervisor rejected the request citing the group's workload.  Also on

August 15, 2001, Plaintiff's supervisor issued a "Letter of Requirement" stating that

Plaintiff must request and obtain permission to take leave in advance of any absence.  On

August 29, 2001, Plaintiff requested one hour of annual leave because he had overslept.

That request was denied and Plaintiff was charged with one hour of leave without pay.

On August 22, 2001, Plaintiff sought to amend his administrative complaint to allege that

his supervisor's denial of leave, charge of leave without pay, and letter of requirement

were retaliation for his administrative age discrimination complaint.  Plaintiff, however,

withdrew these added claims on September 9, 2001, along with his claim of retaliation

stemming from the denial of Plaintiff's request to work through lunch.

Plaintiff's withdrawal of claims left outstanding only his claims relating to his

non-selection for the supervisor position and the 2001 assignment.  The Navy denied

Plaintiff's administrative complaint on March 29, 2002.  Upon appeal the Equal

Employment Opportunity Commission (hereinafter "EEOC") affirmed the Navy's

determination.  Plaintiff took no further action regarding these claims and he has not

raised them in this action.

Throughout his tenure as a trainer, Plaintiff also experienced ongoing problems

with his e-mail.  Sometime between January and March of 2001 approximately 56 e-mail

4

messages were lost from Plaintiff's deleted mail folder.  On August 20, 2001, approximately 40-45 e-mail messages were lost from his deleted mail folder.  An additional 28 e-mail messages were lost on March 8, 2002, from Plaintiff's deleted mail folder.  On October 9, 2002, Plaintiff alerted the Shipyard's computer security specialist that 86 e-mail messages had just been lost relating to his administrative complaint and a mold problem at the shipyard.  Plaintiff's attempts to have the e-mail messages restored were unsuccessful.

On June 30, 2002, Plaintiff's temporary assignment to the training group was extended for an additional year (hereinafter "2002 assignment").  In response, Plaintiff filed a second formal administrative complaint, alleging that the 2002 assignment was retaliation for his age discrimination complaints.  He also alleged that this created an ongoing hostile work environment.  This complaint was denied by the Navy on July 13, 2004.  Plaintiff did not appeal the Navy's finding to the EEOC, and timely commenced this action. The only claims remaining at issue in this action are those contained in Plaintiff's second administrative complaint: (1) that the 2002 assignment was in retaliation for his previous claim of age discrimination, and (2) that Plaintiff was subjected to a hostile work environment.

## II.        Standard of Review

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the

governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).  "A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'"  *De-Jesus-Adorno v. Browning Ferris Indus.*, 160 F.3d 839, 841-42 (1st Cir. 1998) (quoting *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995)).

### III.        Discussion

Because Plaintiff has produced no direct evidence of discrimination, he must, in order to succeed in this action, make a *prima facie* showing that: (1) he engaged in ADEA-protected activity; (2) he was thereafter subjected to an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.  *See Mesnick v. General Electric Company*, 950 F.2d 816, 827 (1st Cir. 1991).  Defendant concedes that Plaintiff engaged in ADEA protected activity and, thus, the first element of the *prima facie* case is satisfied.  Because Plaintiff claims two separate adverse employment actions, the 2002 assignment and a hostile work environment, the Court will address each one separately.

#### A.        The 2002 Assignment

Plaintiff has succeeded in creating a genuine issue of material fact as to whether the 2002 assignment was an "adverse employment action."  In cases involving similar

retaliation claims under Title VII, the First Circuit has interpreted "adverse employment action" to include "disadvantageous transfers or assignments." *Gu v. Boston Police Dept.*, 312 F.3d 6, 14 (2002).  Plaintiff has offered some evidence that his assignment was disadvantageous because it lessened his chances of receiving a promotion to GS-12.  Accordingly, for purposes of summary judgment, Plaintiff has satisfied the second element of his *prima facie* case.

Plaintiff has also proffered some evidence supporting the inference that a causal connection existed between his administrative complaints and the 2002 assignment.  Plaintiff alleges a series of retaliatory acts stretching from his protected activity through the 2002 assignment.  Although "evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a casual connection," *Che v. Massachusetts Bay Transp. Authority*, 342 F.3d 31, 38 (1st Cir. 2003), Plaintiff's evidence on this point is extremely weak.  The only discriminatory treatment that Plaintiff alleges continued throughout that time was the deletion of e-mails.  Furthermore, Plaintiff's evidence will support only weak inferences that those deletions were intentional or motivated by retaliatory animus.  Nonetheless, the Court notes that "the prima facie case [requires] 'a small showing that is not onerous and is easily made.'"  *Id.* (quoting *Koseris v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003)).  Consequently, for purposes of summary judgment, the Court will treat the Plaintiff has having succeeded in establishing a causal connection, and, thus, a *prima facie* case.

Having established a *prima facie* case the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for its employment decision."  *Mesnick*, 950 F.2d

at 827.  On this point, Defendant asserts that Plaintiff received his 2001 assignment to the training group because his former position no longer existed, he was familiar with the work of the new position, and there were no other positions available for which he was qualified.  Defendant's SOMF ¶ 105.  Defendant further asserts that Plaintiff was then reassigned to the training group in 2002 because they were unable to find other available placement opportunities.  Affidavit of Greg Seward ¶ 7 (attached as Exhibit 150 to Defendant's SOMF (Docket Item No. 11)).  Because this is a facially adequate nondiscriminatory reason for the 2002 assignment, defendant has met his burden.  *See Mesnick*, 950 F.2d at 825.

The burden then falls upon the Plaintiff to present evidence from which a reasonable jury could conclude that Defendant's proffered justification is pretextual and that the 2002 assignment was, in fact, motivated by retaliatory animus.  *Mesnick*, 950 F.2d at 827.  Here Plaintiff fails.

Plaintiff has failed to provide any significantly probative evidence that Defendant's justification for the 2002 assignment is pretextual.  Plaintiff points to the addition of a third instructor in the training group as proof that he was no longer needed in that position.  He argues that because the group was <u>originally</u> created to consist of just two instructors, a reasonable jury could infer that there was no legitimate reason for him to remain as a third instructor.  Such an inference, however, would be unreasonable. The presence of a third instructor could easily be explained by many events not involving a negative animus, including a change in the group's responsibilities or workload.  Plaintiff has offered no evidence to negative the occurrence of any such events.  Plaintiff has failed to offer any evidence from which a reasonable person could infer that his services

8

in the group were no longer needed.  Plaintiff's other attempt to demonstrate pretext, by asserting that he could have been hired as a General Engineering Technician, fails because of the absence of any evidence of any particular position for which he was qualified that was available in 2002.

Plaintiff has also failed to present evidence from which a reasonable jury could conclude that the 2002 assignment was motivated by retaliatory animus.  Plaintiff attempts to demonstrate a pattern of retaliation by pointing to his previous (2001) claims, specifically: the deletion of e-mails, the denial of leave, and the denial of his request to work through lunch (hereinafter "underlying claims").  Plaintiff asserts that these underlying claims form a pattern of retaliation from which a reasonable jury could conclude that the 2002 assignment was motivated by similar animus.  Plaintiff, therefore, has a double burden: first, to provide evidence from which a reasonable jury could conclude that the underlying claims were, in fact, retaliation for his age discrimination complaint, and, second, to demonstrate a sufficient nexus between that retaliation and the 2002 assignment to permit the inference that the 2002 assignment was motivated by the same retaliatory animus.  The record demonstrates that Plaintiff has failed to meet either burden, and, consequently, is unable to make out a jury question on this issue.

        1.     <u>Plaintiff's underlying claims</u>

            a.     <u>E-mail deletions</u>

Plaintiff's only evidence that any of his e-mails were intentionally deleted is the opinion of a union supervisor that the deletions were "very unusual" because he had never seen anything like it.  *See* Affidavit of Michael Russo ¶ 31 (attached to Plaintiff's Objection to Motion for Summary Judgment and Incorporated Memorandum of Law

(Docket Item No. 16)).  The fact that the events were unusual, however, does not permit any inference of intentional action or bad purpose as is sought here by Plaintiff.  The record demonstrates that other reasonable explanations exist for the loss of his e-mails.  Plaintiff himself admits that on at least one occasion he may have inadvertently deleted the files himself.  *See* Plaintiff's Response to Defendant's SOMF ¶ 139 (Docket Item No. 15).  Plaintiff also admits that on at least one other occasion the loss of e-mails were preceded by a message from the system administrator that his mailbox was too full.  *See* Plaintiff's Response to Defendant's SOMF ¶¶ 108, 109 (Docket Item No. 15)  Any inference that these e-mail messages were being intentionally deleted from Plaintiff's system is made all the more dubious by the fact that they were contained in his <u>deleted</u> mail folder.

Even if a reasonable jury could conclude that the deletions were intentional, Plaintiff has failed to present any evidence supporting the inference that they were being deleted <u>because</u> <u>of</u> his age discrimination claim.  Nothing in the record indicates who would have been deleting these e-mails or why they would have done so.  Although Plaintiff broadly alleges that the e-mails related to his pending complaint he fails to identify anything contained in those e-mails that would motivate his superiors to intentionally delete them or how the deletion of them from Plaintiff's computer would advantageously serve any interest of the Defendant.  Furthermore, the timing of the deletions directly rebuts Plaintiff's argument because they began to occur <u>prior</u> <u>to</u> any of his age discrimination complaints.  Accordingly, a reasonable jury could not conclude that Plaintiff's e-mail was intentionally deleted in retaliation for his age discrimination complaints.

b.    <u>Denial of leave</u>

To establish that denial of Plaintiff's leave requests were in retaliation for his age discrimination complaint Plaintiff relies upon the union supervisor's opinion that they were "very unusual."  As with the deletion of e-mails, this opinion, without more, is insufficient to permit a reasonable jury to infer retaliation.  Viewing the record as a whole, Plaintiff's difficulties obtaining leave in August of 2001 are explained by his then recent transfer to a new position with a new supervisor.  The record supports this non-retaliatory explanation as Plaintiff does not complain of any additional difficulties obtaining leave after August of 2001.  Consequently, no trialworthy issue exists as to this claim of retaliation.

c.    <u>Denial of Plaintiff's request to work through lunch</u>

Plaintiff has also failed to provide evidence from which a reasonable jury could conclude that denial of his request to work through lunch was in retaliation for his age discrimination complaint.  To establish that this denial was retaliation, Plaintiff claims that many of the 600 employees within his department were still being permitted to engage in the practice.  Although evidence of disparate treatment may be sufficient to establish retaliation, there is nothing in the record to indicate that any of these employees were similarly situated to Plaintiff.  The record contains no evidence, and Plaintiff does not allege, that any other members of his new training group were being permitted to work through lunch.  The record does indicate, however, that denial of Plaintiff's request to work through lunch may be explained by his recent transfer to a new position with a new supervisor.  Plaintiff admits that part of the reason he had been permitted to work through lunch was that his work responsibilities had not required him to maintain the

same schedule as other employees.  Plaintiff has failed to provide evidence permitting the inference that Plaintiff was being treated differently from similarly situated workers, and, thus, a reasonable jury could not conclude that this was retaliation for his protected activity.

2.   Nexus between the underlying claims and the 2002 assignment

Although there is no trialworthy issue as to any of the underlying claims of retaliation, assuming *arguendo* that such a jury question remained, Defendant is entitled to summary judgment because Plaintiff has failed to establish a sufficient nexus between any previous acts of retaliation and the 2002 assignment.  First, neither the denial of Plaintiff's request to work through lunch, nor the denial of Plaintiff's annual leave, are temporally connected to the 2002 assignment.  Plaintiff does not claim he had any difficulties obtaining leave after August of 2001.  This 10 month gap makes any inference that the 2002 assignment arose from the same retaliatory animus unreasonable. Denial of Plaintiff's request to work through lunch is even more remote, as it occurred over a year prior to the 2002 assignment.  Second, with regard to the e-mail deletions, there is no evidence to suggest that if any persons, other than Plaintiff himself, were responsible for deleting Plaintiff's e-mail, that they were also involved in his 2002 assignment.  A reasonable jury could not conclude, based upon the evidence in this record, that the 2002 assignment arose from the same negative animus or actions as any past acts of retaliation may have, if such was the case.

Finally, the Court notes that Plaintiff has admitted that the 2001 assignment to the training group was for non-discriminatory reasons: specifically, "because his former position no longer existed, because he was familiar with the work, and because he lacked

the background and experience necessary for what positions were available." Plaintiff's

Response to Defendant's SOMF ¶ 105[3]; *see also* Plaintiff's Objection to Motion for

Summary Judgment and Incorporated Memorandum of Law (Docket Item No. 16)

("Because the Training Group was new in June 2001, perhaps there was some legitimacy

to temporarily reassigning the plaintiff to that position.  He had pretty much designed and

built the training program…").  Having admitted that the first assignment was for non-

discriminatory reasons, Plaintiff fails to demonstrate that some reason, other than those,

retaliatory in nature, gave rise to the same assignment just one year later.  Consequently,

"the aggregate evidence of pretext and retaliatory animus" does not suffice to make out a

jury question.  *Mesnick*, 950 F.2d at 827.

> **B.     Hostile Work Environment Claim**

Plaintiff's hostile work environment claim must likewise fail.  As noted above,

while Plaintiff alleges numerous examples of actions he considers to be adverse to him,

he fails to provide any credible evidence that those acts were retaliatory.  Moreover, even

if Plaintiff were to succeed in demonstrating that those acts were driven by a negative

animus, the acts fall far short of creating a hostile work environment.  Specifically,

Plaintiff is unable to demonstrate that his work environment was objectively offensive.

*See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  A work environment is

objectively offensive when a reasonable person would find it hostile or abusive.  *Id.*  In

this case the alleged conduct is not shown to be threatening, humiliating, severe, or

frequent.  *See id* at 23 ("[W]hether an environment is 'hostile' or 'abusive' can be

---

[3] Plaintiff is deemed to have admitted this fact Pursuant to Local Rule 56(f).  Although Plaintiff's Response
to Defendant's Statement of Material Facts purports to deny the allegation it fails to provide a record
citation supporting the denial in conformity with Local Rule 56(c).  Accordingly, the fact is deemed
admitted.

determined only by looking at all the circumstances ... includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.").  On this record no reasonable person could conclude that Plaintiff's work environment was objectively offensive.  Consequently, no genuine issue of material fact exists as to whether Plaintiff was subjected to a hostile work environment, and Defendant is entitled to judgment as a matter of law.

### IV.       Conclusion

For the reasons set forth above, the Court **ORDERS** that Defendant's Motion for Summary Judgment be, and it is hereby, **GRANTED**;

/s/Gene Carter_____

**GENE CARTER**
Senior United States District Judge

Dated at Portland, Maine this 12th day of October, 2005.